IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Rachel A. Wedel,

      Plaintiff,

v.                                                                                                                             Case No. 13-CV-2298

Petco Animal Supplies Stores, Inc.,

      Defendant.

## MEMORANDUM & ORDER

Plaintiff Rachel A. Wedel filed this suit against Petco Animal Supplies Stores, Inc. ("Petco"), her former employer, asserting numerous claims arising out of her employment with Petco, including claims for discrimination under the Americans with Disabilities Act and retaliation under the Family and Medical Leave Act. This matter is presently before the court on defendant's motion to dismiss Count VIII of plaintiff's second amended complaint (doc. 47) for failure to state a claim upon which relief can be granted. In that count, plaintiff asserts a claim for intentional infliction of emotional distress under Kansas law. As will be explained, the motion is denied.

Defendant's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiff's second amended complaint, are accepted as true for purposes of defendant's motion. Plaintiff began her employment with Petco in 2004 and eventually was promoted to the position of Assistant Store Manager. At the time she was hired, plaintiff disclosed to Petco that she suffered from Crohn's disease and that she would have occasional doctor appointments that would necessitate leave from work. While the first several years of plaintiff's employment passed without incident, plaintiff experienced a significant flare-up of her Crohn's disease in April 2011 and she began missing long periods of work due to hospital stays and subsequent medical restrictions. When her physician released her to work a partial schedule, Petco began permitting plaintiff to utilize intermittent FMLA leave. Once plaintiff exhausted her FMLA leave, she began receiving benefits under a short-term disability policy.

Plaintiff contends that Petco took various adverse employment actions against her on the basis of her disability and her exercise of her rights under the FMLA, including changing her employment status from exempt to non-exempt; failing to pay her overtime wages; docking her pay when she worked less than 40 hours in a workweek; ignoring her medical restrictions; questioning her time sheets; falsely accusing her of stealing store merchandise; and initiating criminal charges against her. According to plaintiff, Petco took these actions in a concerted effort to cause plaintiff to resign her employment and, when those efforts failed, Petco terminated plaintiff's employment in February 2012.

In support of her claim for intentional infliction of emotional distress, plaintiff alleges that defendant accused her of falsifying her time sheets for the week of December 4, 2011;

2

deliberately refused to investigate plaintiff's legitimate explanation of why her time sheets reflected hours worked when plaintiff was not present in the store; and knew that her time sheets were in fact accurate because the District Manager had given plaintiff an assignment to engage in competitive shopping outside the store. She further alleges in support of her claim that she was improperly suspended from work as a result of defendant's false claim that she had falsified her time sheets as well as defendant's claim that plaintiff, on one occasion, had worked in violation of her medical restrictions and without taking a lunch break. Finally, plaintiff alleges intentional infliction of emotional distress on the grounds that defendant falsely accused plaintiff of stealing store merchandise. With respect to the alleged theft of store merchandise, plaintiff asserts in her second amended complaint that defendant refused to interview an exculpating witness on plaintiff's behalf and refused to consider exculpating video of plaintiff's conduct. She contends that defendant "concocted" the theft allegations in retaliation for plaintiff's exercising her rights under the ADA and the FMLA. According to plaintiff, the theft charge was dismissed by the trial judge at the close of the prosecutor's case on a motion for a directed verdict.

To prevail on a claim of intentionally causing emotional distress, a plaintiff must prove four elements: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Valadez v. Emmis Communications*, 290 Kan. 472, 476 (2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 592 (1991)). Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance,

determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Id*. (citing *Roberts v. Saylor*, 230 Kan. 289, 292–93 (1981)). Conduct that rises to the level of tortious outrage must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. *Id*. (citing *Taiwo*, 249 Kan. at 592–93).

Defendant moves to dismiss this claim on the grounds that the conduct described in plaintiff's second amended complaint, even if true, is not sufficiently extreme or outrageous to permit recovery under Kansas law.[1] Plaintiff counters that her allegations are sufficiently analogous to the facts set forth in *Taiwo v. Vu*, 249 Kan. 585 (1991), wherein the Supreme Court of Kansas affirmed a jury verdict in favor of the plaintiffs on a claim of intentional infliction of emotional distress, to entitle her to discovery on her claim. In *Taiwo*, the plaintiffs filed a civil suit against the defendant alleging assault, battery, false imprisonment and intentional infliction of emotional distress. *Id*. at 586. The dispute in that case initially arose out of an employment relationship. *Id*. The disagreement between Mrs. Taiwo and Vu concerned Mrs. Taiwo's final paycheck. *Id*. at 587. During an argument about the amount of the final paycheck, the defendant shoved Mrs. Taiwo in the chest and subsequently locked Mrs. Taiwo inside the day-care center. *Id*. Vu also made false accusations to the police indicating that Mr. Taiwo had vandalized her car and she instructed another employee to tell the police that she observed Mr.

---

[1] For purposes of its motion, defendant does not challenge plaintiff's allegations of severe emotional distress.

4

Taiwo's vandalism, when in fact she did not witness any acts of vandalism by the Taiwos. *Id.* at 587-88. The jury returned a verdict in favor of the plaintiffs in the amount of $20,000 and the trial judge assessed $3,000 in punitive damages.

Like *Taiwo,* some of the allegations in plaintiff's second amended complaint reflect a malicious, intentional abuse of the criminal justice process. Plaintiff alleges that defendant concocted the allegations of theft against plaintiff in retaliation for plaintiff's exercise of her statutorily protected rights after defendant's efforts to force plaintiff to quit were unsuccessful. While *Taiwo* clearly involved additional tortious conduct not alleged here—physical assault as well as false imprisonment—there is no indication in any case that the court has uncovered that a complaint must fit squarely on all fours with *Taiwo* to state a claim of outrage under Kansas law. Indeed, the Tenth Circuit has suggested, albeit in an unpublished decision, that an employer's knowing submission of a false report about an employee to a government agency might suffice to state a claim of outrage under Kansas law. In *Wagoner v. Pfizer, Inc.*, 391 Fed. Appx. 701 (10th Cir. 2010), the employee's outrage claim focused largely on her theory that her employer had falsely accused her of altering the dates on certain forms, accused her of lying when it confronted her about it, refused to listen to her explanation and then reported to the FDA's Office of Compliance that the employee had altered the forms. *Id.* at 705. Affirming the district court's grant of summary judgment on the claim under Kansas law, the Tenth Circuit explained:

> Unlike the uncontestedly false reporting at issue in *Taiwo*, Pfizer presented evidence that it honestly believed Plaintiff had falsified dates on her starter forms to spread out her work activity. Further, Pfizer was required to report any instances of such falsification to the FDA. Wagoner has presented no evidence, other than her own denials of any wrongdoing, that demonstrates Pfizer

5

intentionally lied to the FDA. Accordingly, the district court's grant of summary judgment in Pfizer's favor on this claim was therefore correct.

*Id*. at 712. While the Circuit, then, did not squarely address the issue before this court, it certainly left the door open for a potential outrage claim under Kansas law based on an employer's false reporting and intentional lying to a governmental agency about an employee.

As noted earlier, certain allegations in plaintiff's second amended complaint reflect that defendant knowingly pursued false criminal charges against her for the purpose of "covering up" the true reasons for plaintiff's termination—plaintiff's disability and her exercise of her FMLA rights. Other allegations in that complaint, however, suggest (somewhat inconsistently) that defendant unreasonably concluded that plaintiff had committed theft and that defendant's unreasonable mistake would have been easily remedied if defendant had interviewed a specific witness or looked at certain surveillance tape—actions that it unreasonably refused to take despite plaintiff's requests that it do so. Because discovery will reveal the specific facts underlying plaintiff's claim, the court can better ascertain at the summary judgment stage whether defendant's conduct rises to the level of outrageousness under Kansas law. The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss Count VIII of plaintiff's second amended complaint (doc. 47) is denied.

**IT IS SO ORDERED.**

Dated this 10th day of March, 2014, at Kansas City, Kansas.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge