## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Rachel A. Wedel,**

        **Plaintiff,**

**v.**                                                          **Case No. 13-CV-2298**

**Petco Animal Supplies Stores, Inc.,**

        **Defendant.**

### MEMORANDUM & ORDER

Plaintiff Rachel A. Wedel filed this suit against Petco Animal Supplies Stores, Inc. ("Petco"), her former employer, asserting numerous claims arising out of her employment with Petco. After the court dismissed certain claims on Petco's motion to dismiss and the parties stipulated to the dismissal of other claims, plaintiff's remaining claims include a claim for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, and three claims under Kansas state law—malicious prosecution, abuse of process and intentional infliction of emotional distress. This matter is presently before the court on Petco's motion for summary judgment on plaintiff's remaining claims (doc. 92). As will be explained, the motion is granted.

I.      **Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff as the non-moving party. Plaintiff Rachel A. Wedel was employed by defendant Petco Animal Supplies Stores, Inc. ("Petco") from 2004 through early February 2012 and during that

time she was ultimately promoted to Assistant Store Manager.  The first several years of plaintiff's employment with Petco passed without incident.  On May 29, 2011, plaintiff was admitted to the hospital for symptoms related to Crohn's disease.  Plaintiff had been diagnosed with Crohn's disease in 1994 and she advised Petco about her diagnosis when she was hired. Nonetheless, plaintiff had not required any treatment for her Crohn's disease in many years.  In fact, plaintiff's Crohn's disease had not affected her employment with Petco in any way prior to her hospital admission in May 2011 and had not affected her employment with Sears in any way—where she worked from 1999 through 2007.

In early June 2011, plaintiff returned to work on a reduced schedule, working no more than 5 hours per day and 25 hours per week.  She maintained this schedule through the end of July 2011.  During this same time period, plaintiff was also working part-time for another employer as a dog trainer and she judged between two and four dog shows.  Plaintiff also traveled to St. Louis to attend the wedding of a friend.  On July 31, 2011, plaintiff began full-time medical leave in connection with a scheduled surgery related to her Crohn's disease.  She returned to work in October 2011 and advised Petco that the only restrictions her Crohn's disease would place on her ability to perform her duties were "extra bathroom breaks" and time-off for illness and doctor's appointments.  By December 2011, plaintiff indicated that she had "no restrictions" on her ability to work at Petco and simply asked that she be permitted to take frequent restroom breaks. There is no evidence in the record as to the frequency with which plaintiff actually required restroom breaks or the frequency with which plaintiff missed work due to illness or doctor's appointments.

2

On January 21, 2012, plaintiff purchased and took home nearly $150 in products from Petco.  The next morning, plaintiff entered her own return transaction on a Petco register prior to the store's opening and she did so while logged into the system as another employee.  The store-security video for that day reflects plaintiff walking into the store without carrying any Petco products and shows plaintiff conducting the return transaction without any products at the register.[1]   Lorie Moss, plaintiff's supervisor and the store manager, alerted Erin Reynolds, Petco's Regional Loss Prevention Manager, about the suspicious transaction.   On February 7, 2012, Ms. Moss and Ms. Reynolds met with plaintiff about the suspicious return.   Plaintiff admitted that she had conducted the transaction under another associate's name in violation of company policy.   She further admitted that the transaction appeared suspicious and, in her deposition, testified that the circumstances suggested a fraudulent return. Neither Ms. Moss nor Ms. Reynolds interviewed Susanne Stonebraker, plaintiff's co-worker who walked into the store with plaintiff on the morning of the return and who was in the store at the time of the return. Ms. Stonebraker avers that plaintiff was "carrying bags" into the store on the morning of the return transaction.

At the conclusion of the meeting, plaintiff's employment was suspended and Ms. Reynolds contacted the Overland Park Police Department, who arrived at the store and arrested plaintiff.  Later that day, Ms. Reynolds recommended the termination of plaintiff's employment to Petco's Regional Human Resource Partner.  Plaintiff's employment was terminated that day

---

[1] Curiously, while plaintiff states that the security video has not been preserved, and suggests without support that Petco intentionally destroyed the video, plaintiff does not dispute the contents of the video.

for theft.  Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## Disability Discrimination

In the pretrial order, plaintiff asserts a claim for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553.  According to plaintiff, Petco terminated her employment on the basis of her disability and otherwise subjected her to disparate treatment based on her disability.  To establish a prima facie case of employment discrimination under the ADA, plaintiff must present evidence that (1) she is

4

disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job with or without accommodations; and (3) she was terminated under circumstances which give rise to an inference that the termination was based on her disability. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (citations omitted). As for the first element, Congress provided three statutory definitions for "disability" under the ADA: A plaintiff may show either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id*. (quoting 42 U.S.C. § 12102(1)). In her submissions, plaintiff contends that she is disabled for purposes of the ADA under subsections (A) and (B). In its motion for summary judgment, Petco contends that summary judgment is appropriate because plaintiff has come forward with no evidence that she is disabled such that her prima facie case fails as to the first element.[2] As will be explained, no jury could conclude based on the undisputed evidence that plaintiff is disabled under prong (A) or (B) of the statutory definition. The court, then, grants Petco's motion for summary judgment on this claim.

---

[2] Petco also contends that summary judgment is appropriate because the discriminatory acts identified by plaintiff do not rise to the level of "adverse employment actions." *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1038 n.10 (10th Cir. 2011) (to prevail on ADA discrimination claim, plaintiff must demonstrate some sort of adverse action or adverse effect on her employment). This argument is easily rejected as plaintiff plainly alleges in the pretrial order that Petco terminated her employment based on her disability. *See* Pretrial Order at ¶ 3.a. ("The actual reason[] for plaintiff's termination [was] the fact that she had Crohn's disease."). And while Petco further contends that plaintiff has not shown that Petco's proffered reason for terminating her employment is pretextual, the court declines to address this argument because plaintiff's evidence is clearly insufficient to demonstrate a prima facie case in the first instance.

To demonstrate an actual disability under subsection (A), plaintiff must have a recognized impairment, must identify one or more appropriate major life activities, and show that the impairment substantially limits one or more of those activities. *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014). Here, plaintiff has identified her disabling impairment as Crohn's disease and she expressly relies on only one major life activity—controlling her bowels.[3] To show that her Crohn's disease substantially limits her ability to control her bowels, plaintiff must show that she is substantially limited in her ability to perform the major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). This analysis requires an "individual assessment," *id*. § 1630.2(j)(1)(iv), and may take into consideration facts such as the difficulty, effort or time required to perform the major life activity; pain experienced when performing a major life activity; and/or the way the impairment affects the operation of a major bodily function. *Id*. § 1630.2(j)(4)(ii). A medical diagnosis is insufficient; rather, the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

In support of her argument that her Crohn's disease substantially limits her ability to control her bowels, plaintiff has come forward with evidence that she was diagnosed with the disease in 1994; that the disease is defined as an inflammatory bowel disorder that "produces a thickening of the intestinal wall, a narrowing of the bowel channel, and a variety of symptoms including abdominal pain, fever, diarrhea, flatulence, fatigue, extreme pain, and dehydration;"

---

[3] While the Tenth Circuit has not determined whether controlling one's bowels constitutes a major life activity, the court assumes without deciding that it does.

that the disease generally affects the functioning of the bowel; and that there is no known cure for it.  This evidence, however, does not speak to the affect that plaintiff's Crohn's disease has on her own daily activities and, thus, has no bearing on the "substantial limitation" issue.  In fact, there is no evidence in the record that plaintiff's condition even on occasion prevented plaintiff from controlling her bowels.  Although there is evidence that plaintiff requested "extra bathroom breaks" as an accommodation during her work shifts, there is no evidence concerning the number of restroom breaks plaintiff actually utilized or the urgency with which she required such breaks.  *Compare Childers v. Hardeman County Bd. of Educ.,* 2015 WL 225058, at *5-6 (W.D. Tenn. Jan. 15, 2015) (fact issues remained on whether impairment substantially limited plaintiff's ability to control bodily functions where evidence demonstrated that plaintiff's impairment could cause her to use the restroom immediately and frequently, as much as 20 times in one hour); *Braheny v. Pennsylvania,* 2012 WL 176186, at *2 (E.D. Pa. Jan. 18, 2012) (genuine issue of material fact existed as to disability where plaintiff testified that his colitis resulted in "several accidents" at work and required him to use the restroom between 30 and 60 times each day); *Khan v. Bank of America, N.A.*, 572 F. Supp. 2d 278, 288-89 (N.D.N.Y. 2008) (fact issues remained as to whether IBS substantially limited plaintiff's ability to control bowels; plaintiff's medical records and testimony reflected severe symptoms when symptomatic); *with Crawford v. New York Life Ins. Co*., 2006 WL 2792779, at *5 (E.D.N.Y. Sept. 27, 2006) (granting summary judgment on substantial limitation issue where plaintiff offered no evidence that IBS substantially limited her ability to eliminate waste; plaintiff did not testify that IBS caused problems controlling the elimination of waste beyond needing frequent trips to the restroom).

Moreover, the undisputed evidence reflects that plaintiff's Crohn's disease did not substantially limit her ability to control her bowels. Plaintiff concedes that her Crohn's disease did not affect her employment at Sears in any way from 1999 through 2007 and that her Crohn's disease did not affect her employment at Petco at any time from 2002 until 2011. Plaintiff stipulated in the pretrial order that prior to April 2011 she had not required any medical treatment for her Crohn's disease for many years. In fact, prior to April 2011, plaintiff required no treatment for her Crohn's disease. Following plaintiff's 2011 flare-up and resulting surgery, plaintiff was able to return to work, asking only for additional bathroom breaks and time off for doctors' appointments. This evidence does not indicate a "substantial limitation" on plaintiff's ability to control her bowels as compared to the general population and no reasonable jury could conclude otherwise. Summary judgment, then, is granted on plaintiff's claim that she suffered from an actual disability under the ADA. Moreover, because the record-of-impairment standard under prong (B) is satisfied only if plaintiff comes forward with evidence that she actually suffered an impairment that substantially limited one or more of her major life activities, plaintiff's failure to satisfy prong (A) is fatal to her claim under prong (B). *See Zwygart v. Board of County Commr's of Jefferson County*, 483 F.3d 1086, 1091 (10th Cir. 2007) (a plaintiff seeking to prove a disability under prong (B) must prove that she actually suffered from an impairment that substantially limited a major life activity).[4]

**Malicious Prosecution**

---

[4] Plaintiff relies on the same evidence—and the same major life activity concerning the functioning of her bowel—to support both claims.

Plaintiff also sets forth in the pretrial order a claim for malicious prosecution based on Petco's decision to notify the Overland Park Police Department about plaintiff's alleged theft of merchandise and the subsequent prosecution of plaintiff for theft.   Under Kansas law, a plaintiff must prove the following elements to maintain an action for malicious prosecution:   that the defendant initiated, continued or procured civil or criminal proceedings against the plaintiff; that the defendant acted without probable cause in so doing; that the defendant acted with malice; that the proceeding terminated in favor of the plaintiff; and that the plaintiff sustained damages. *Braun v. Pepper*, 224 Kan. 56, 58-59 (1978).   In its motion for summary judgment, Petco contends that no reasonable jury could conclude, based on the uncontroverted facts, that Petco acted "without probable cause" and "with malice" when it initiated criminal proceedings against plaintiff.[5]

For purposes of a malicious prosecution claim, probable cause exists "when there is a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which he or she is complaining." *Bergstrom v. Noah*, 266 Kan. 829, 837 (1999) (citing *Nelson v. Miller*, 227 Kan. 271, 277 (1980)).   This inquiry is "limited to the facts and circumstances as they appeared to the initiator at the time the prosecution was commenced." *Id*.   Because the facts as they appeared to Ms. Reynolds at the time she contacted the Overland Park police department are undisputed, the court concludes as a matter of law that probable cause existed for Petco to initiate criminal proceedings against plaintiff. *See Bergstrom*, 266 Kan. at 837 ("If the facts are

---

[5] Petco also contends that there is no evidence that plaintiff sustained damages as a result of the criminal proceedings initiated by Petco.  The court rejects this argument as it undisputed that plaintiff incurred attorneys' fees in those proceedings.

undisputed, the question of whether probable cause existed is one for the court to decide as a matter of law.").

Plaintiff does not dispute that the store-security video for January 22, 2012 showed plaintiff walking into the store for the day without carrying any Petco products; that, prior to the store's opening, she returned product back to her own credit card while logged in as another employee in contravention of store policy; that store-security video of the return transaction shows that the transaction was keyed in from a receipt without merchandise present; and that the returned product was never located. Indeed, plaintiff herself admits that the circumstances leading up to her termination would be sufficient grounds to suspect a fraudulent return. While plaintiff avers that she did not steal any merchandise from Petco, she does not dispute that Ms. Reynolds honestly believed that plaintiff stole merchandise from Petco through a fraudulent return.[6] And while Ms. Stonebraker avers that plaintiff was, in fact, "carrying bags" into the store on the morning of January 22, 2012, that evidence does not specifically controvert Ms. Reynolds statement that the store-security video showed that plaintiff walked into the store that morning "without carrying any products." Moreover, plaintiff does not controvert Petco's statement of fact concerning the content of the store-security video for January 22, 2012. *See* Petco SOF ¶ 65. Finally, plaintiff's suggestion that Ms. Reynolds' investigation into the alleged theft was deficient is irrelevant in the absence of any specific facts that Ms. Reynolds might have uncovered at that time that would have undermined Ms. Reynolds's belief that plaintiff had

---

[6] For example, in Petco's statement of facts, Petco asserts that "[a]t the time Reynolds contacted the Overland Park Police Department, Reynolds was of the belief that plaintiff processed her own transaction under somebody else's number, which violated company policy, and that plaintiff stole those items with the fraudulent return because the product did not come back into the store." Petco's SOF ¶ 79. Plaintiff does not controvert this fact in any respect.

stolen merchandise from Petco through a fraudulent return.   Because the undisputed facts show that Petco had probable cause to initiate criminal proceedings against plaintiff, summary judgment in favor of Petco is warranted on plaintiff's malicious prosecution claim.

Nonetheless, even if plaintiff had come forward with evidence suggesting an absence of probable cause for Ms. Reynolds' decision to contact the police, summary judgment is nonetheless appropriate because plaintiff has no evidence that Ms. Reynolds acted with malice in doing so.   For purposes of a malicious prosecution claim, the element of malice is present when proceedings were "initiated primarily for a purpose other than that of securing proper adjudication of the claim on which the action is based." *Bartal v. Brower*, 268 Kan. 195, 200 (1999) (citation omitted).   Plaintiff does not offer any nefarious purpose that Ms. Reynolds might have had for contacting the police in this case and the evidence reveals none.   While plaintiff contends that Ms. Moss "framed" plaintiff for theft to secure plaintiff's termination because she was fed up with plaintiff's doctors' appointments and sick days, it is undisputed that Ms. Reynolds made the determination to contact the police and to recommend plaintiff's termination based on her own investigation into the facts surrounding the return.   It is further undisputed that Ms. Reynolds had no knowledge of plaintiff's Crohn's disease and there is no evidence that Ms. Reynolds had any knowledge of plaintiff's doctors' appointment or use of sick days.   In the absence of any evidence that Ms. Reynolds acted for any purpose other than that of securing proper adjudication of the theft charge, summary judgment on plaintiff's malicious prosecution claim is appropriate.

**Abuse of Process**

11

Plaintiff also sets forth a claim of abuse of process against Petco. Abuse of process exists when the defendant "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Hokanson v. Lichtor*, 5 Kan. App. 2d 802, 809 (1981) (quoting *Restatement (Second) of Torts* § 682 (1977)).[7] In Kansas, the elements of an abuse of process claim are as follows: (1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process); (2) that the defendant had an ulterior motive or purpose in doing so; and (3) that damage resulted to the plaintiff from the irregularity. *Porter v. Stormont–Vail Hosp.*, 228 Kan. 641, 646 (1980) (citations and quotations omitted). As noted in connection with plaintiff's malicious prosecution claim, plaintiff has come forward with no evidence suggesting any ulterior motive or improper purpose on the part of Ms. Reynolds—the sole person responsible for contacting the police based on her own investigation into plaintiff's conduct. In the absence of evidence that Ms. Reynolds used the criminal process to accomplish any purpose other than that which it was designed to accomplish, summary judgment in favor of Petco must be granted. *See Restatement (Second) of Torts* § 682 cmt. a (1977).

**Intentional Infliction of Emotional Distress**

Lastly, plaintiff asserts a claim of intentional infliction of emotional distress under Kansas law. To prevail on a claim of intentionally causing emotional distress, a plaintiff must prove four elements: (1) The conduct of the defendant was intentional or in reckless disregard of

---

[7] Petco contends that summary judgment is warranted at the outset because abuse-of-process claims apply only to the improper use of civil process rather than criminal process. Kansas case law does not support Petco's argument and the court rejects it.

the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Valadez v. Emmis Communications*, 290 Kan. 472, 476 (2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 592 (1991)). Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Id.* (citing *Roberts v. Saylor*, 230 Kan. 289, 292–93 (1981)). Conduct that rises to the level of tortious outrage must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. *Id.* (citing *Taiwo*, 249 Kan. at 592–93).

Petco moves for summary judgment on this claim on the grounds that plaintiff has failed to come forward with evidence of "extreme and outrageous" conduct and plaintiff cannot establish a causal connection between Petco's conduct and any emotional distress she may have suffered. Because no reasonable jury could conclude that Petco's conduct was sufficiently extreme and outrageous as to permit recovery, the court grants summary judgment on this claim without addressing Petco's arguments concerning the connection between its conduct and plaintiff's emotional distress. Plaintiff's claim is based solely on Ms. Moss's treatment of plaintiff from October 2011 when she returned to work after her medical leave through her termination in early February 2012. According to plaintiff, Ms. Moss frequently reprimanded plaintiff in front of customers; gave her instructions in a "demeaning" manner; assigned her

undesirable shifts; unfairly disciplined her; required her to fill out time cards to track her sick leave despite her salaried status; and hassled her for missing work due to her doctors' appointments.[8]  Even viewing the evidence in the light most favorable to plaintiff, these facts do not constitute extreme and outrageous conduct for purposes of establishing a claim for intentional infliction of emotional distress under Kansas law.  Plaintiff does not allege any physical threats or any abusive language directed towards her and she describes, at most, a workplace that was unprofessional and unpleasant.  *See Rome v. Kansas City Water & Light Dept.*, 2005 WL 2138736, at *5 (Kan App. Sept. 2, 2005) (outrage claim under Kansas law requires physical threats or racial slurs; alleged conduct of harassment and humiliation "occurs in businesses throughout the country").  Summary judgment on this claim is granted.  Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1264 (10th Cir. 1998) (summary judgment appropriate on claim for intentional infliction of emotional distress under Kansas law despite evidence that supervisor engaged in unpleasant and unprofessional behavior over three-year period); *Monaco v. Quest Diagnostics, Inc.*, 2010 WL 3843622, at *17 (D. Kan. 2010) (granting summary judgment on claim for intentional infliction of emotional distress despite evidence that employer asked co-workers to monitor and submit complaints about plaintiff; investigated plaintiff for performance problems; and falsely accused plaintiff of threatening to kill a co-worker); *Wagoner v. Pfizer, Inc.*, 2009 WL 304340, at *13-14 (D. Kan. 2009) (granting

---

[8] Plaintiff contends that her claim is also based on Petco's discrimination against plaintiff on the basis of her disability in violation of the ADA and Petco's "fabrication" of the theft charge.  As explained in other parts of this memorandum and order, no reasonable jury could conclude that Petco discriminated against plaintiff on the basis of a disability or that Petco fabricated the theft charge.  This conduct, then, cannot serve to buttress plaintiff's claim of intentional infliction of emotional distress.

summary judgment on claim for intentional infliction of emotional distress despite evidence that supervisor made derogatory remarks over 9-month period and reported her to government agency for misconduct); *Byle v. Anacomp, Inc*., 854 F. Supp. 738, 747–48 (D.Kan.1994) (no claim of outrage where plaintiff felt threatened by her supervisor, was called on occasion a "bitch" by her supervisor, and supervisor monitored her comings and goings and evaluated her performance harshly).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 92) is granted and the parties' joint motion to dismiss (doc. 94) is granted.

**IT IS SO ORDERED.**

Dated this 27th day of February, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge